## BOWERS et al. v. OKLAHOMA TAX COMMISSION.

### Civil Action No. 1184.

District Court, W. D. Oklahoma.

Aug. 28, 1943.

Pollard & Lawrence, of Tyler, Tex., and Dudley, Duvall & Dudley, of Oklahoma City, Okl., for plaintiffs.

W. F. Speakman, of Drumright, Okl., and A. L. Herr, Legal Dept. Oklahoma Tax Commission, of Oklahoma City, Okl., for defendant.

VAUGHT, District Judge.

This is a suit to recover the sum of $3,666.64, together with interest at three per cent from January 5, 1943, paid under protest to the Oklahoma Tax Commission by the plaintiffs on said date. The plaintiffs allege the following reasons for recovery:

1. That the defendant was wholly without jurisdiction, power and authority to levy, assess and collect said taxes for use of property situated in Fort Sill, a military reservation.

2. That the collection of said tax was and is a violation of the Constitution and laws of the United States.

3. That the collection of the tax would constitute a tax on interstate commerce and an unlawful, illegal burden thereon.

4. That the collection of the tax is not authorized by the State of Oklahoma, as plaintiffs purchased all property sought to be taxed for resale before being used.

5. That the contract of plaintiffs with the United States Government amounts to a

so-called cost-plus-a-fixed-fee type of contract and by the statutes of Oklahoma is exempt from said tax.

6. That the plaintiffs were instrumentalities of the United States Army and the United States, and were not subject to the payment of the tax.

7. That other materials would be used in the completion of said contract and should not be taxed by the defendant for the same reasons.

Briefly, the plaintiffs present in substance three propositions in their argument and brief of authorities, which cover all their grounds of recovery.

1. That Fort Sill is a military reservation, under the exclusive jurisdiction and dominion of the federal government.

2. That the plaintiffs are vendors and not users of material and, therefore, do not come within the provisions of the Oklahoma Use Tax Statute.

3. That the contract which the plaintiffs have with the United States Government is and constitutes, under its terms and under the Renegotiation Act of the federal government, a so-called cost-plus-a-fixed fee type of contract.

The facts in the case are stipulated except the testimony of W. A. Lundgren, heard at the trial.

The contention of the plaintiffs that the Fort Sill Military Reservation is under the exclusive jurisdiction and dominion of the federal government is supported by a recent opinion of the Tenth Circuit Court of Appeals, Johnson et al. v. Yellow Cab Transit Company, 137 F.2d 274, decided July 26, 1943. The Act of Congress passed October 9, 1940, 54 Stat. 1059, 4 U.S.C.A. § 13, however, extends the jurisdiction of the State of Oklahoma in the Fort Sill Military Reservation with reference to a use tax on property used on said reservation.

By that Act Congress has ceded to the State of Oklahoma the power and authority to levy and collect a use tax on property used at Fort Sill, under the circumstances shown in this cause, unless the contract is a so-called cost-plus-a-fixed-fee type of contract. This conclusion is inevitable when the situation is thoroughly analyzed. The State of Oklahoma has jurisdiction to pass legislation authorizing the levy and collection of a use tax within the confines of its exterior boundaries. Such legisla-

tion was passed. Congress, under the Act of October 9, 1940, supra, authorized the levy and collection of such a tax and provided: "(a) No person shall be relieved from liability for payment of, collection of, or accounting for any sales or use tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, on the ground that the sale or use, with respect to which such tax is levied, occurred in whole or in part within a Federal area; and such State or taxing authority shall have full jurisdiction and power *to levy and collect any such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area."* (Emphasis supplied.)

Language could hardly be more explicit. But in order to clarify the matter beyond any possible doubt, the Act further defines the term "Federal area" in the following language: "(e) The term 'Federal area' means any lands or premises held or acquired by or for the use of the United States or any department, establishment, or agency of the United States; and any Federal area, or any part thereof, which is located within the exterior boundaries of any State shall be deemed to be a Federal area located within such State. Oct. 9, 1940, c. 787, § 6, 54 Stat. 1060." 4 U.S.C.A. § 18.

■ Thus it is clear that under said Act Congress, in addition to ceding to the state the right to tax "railroad companies and other corporations and their franchises and properties on the reservation", has granted the state the power to levy and collect a use tax in the Fort Sill area.

Under the second proposition raised in the plaintiffs' brief, that the plaintiffs are vendors and not users of material and by reason thereof do not come within the provisions of the Oklahoma Use Tax Statute, there seems to be no merit. The state statute in its definition of "consumer" or "user" is quite plain. 68 Okl.St.Ann. 1251a: "(h) Consumer—User: The term 'consumer' or 'user' means the person to whom the taxable sale is made, or to whom taxable services are furnished. All contractors are deemed to be consumers or users of all tangible personal property including materials, supplies and equipment used or consumed by them in performing any contract and all sales of service and

654

tangible personal property to contractors are taxable sales within the meaning of this Act."

■ With this definition in mind we have only to turn to the contract to determine the status of the contractor. The contract provides as follows: "Article 1. Statement of work. The contractor shall furnish the materials, unless otherwise specified, and perform the work for rebuilding certain existing tent frames into huts, * * *." The contractor here is obligated to furnish the materials for the work provided under the contract. The method employed in furnishing the materials is not important, so long as it is charged to the contractor against his compensation in his final settlement. How the matter was handled in the various details of getting the materials on the ground and the methods employed in incorporating them into the structures would not change the obligation of the contractor to furnish them.

The third proposition of the plaintiffs is entitled to serious consideration. At the close of the hearing it was stipulated that if the court should hold that the contract between the plaintiffs and the United States is a cost-plus-a-fixed-fee type of contract, the plaintiffs should then recover.

Is the contract under its terms and under the Renegotiation Act of the federal government a so-called cost-plus-a-fixed-fee type of contract?

Under the stipulation, the contract was for the approximate sum of $900,120. The contract was designated an "Advertised Lump Sum Contract (Based on Unit Prices) 'Statutory Authority * * * Title II of the First War Powers Act, 1941, Act of December 18, 1941 (Public Law 354—77th Cong.) [50 U.S.C.A.Appendix § 611 et seq.], and Executive Order No. 9001, dated December 27, 1941." 50 U.S.C.A. Appendix § 611 note. It was entered into April 27, 1942. The original renegotiation act was passed by Congress and became a law April 28, 1942, and was amended October 21, 1942, 50 U.S.C.A.Appendix § 1191. It provided that any contractor with the War Department, Navy Department, Treasury Department or Maritime Commission, who had a contract in excess of $100,000, would have the contract renegotiated by the department under which it held a contract, to determine the excessive profits realized from any such contract, and the amount of excessive profits determined would be deducted from the amount of money already paid for the completion of the contract, or in the event the total amount was not paid, it would be deducted from the amount due by the government to the contractor. In determining the excessive profits realized, or likely to be realized, from any contract or sub-contract, the government would first determine the total amount of costs to the contractor in completing his contract and then determine the fee to be allowed the contractor as profit for the completion of the contract. Any amount above the fixed fee determined by the government for the completion of the contract would be deducted from the approximate total amount which the contractor had received, or would receive. The plaintiffs state they have been notified that their contract will be renegotiated. The contract was entered into as a lump sum contract, based on unit prices, statutory authority, under Title II of the First War Powers Act, 1941, Act of December 18, 1941, (Public Law 354, 77th Cong.) and Executive Order No. 9001, dated December 27, 1941. Section 201, Title II of the First War Powers Act, 50 U.S.C.A. Appendix § 611 provides in part as follows: "* * * Provided, That nothing herein shall be construed to authorize the use of the cost-plus-a-percentage-of-cost system of contracting: * * *." And paragraph 6, Title II, Executive Order No. 9001, provides: "Nothing herein shall be construed to authorize the cost-plus-a-percentage-of-cost system of contracting."

It would thus appear that the specific statute and executive order, under which the contract was advertised and let, prohibited a so-called cost-plus-a-fixed-fee type of contract, and what the government may do in renegotiation to regulate profits could not change the contract as to its form as let.

■ Under the facts in this case, the contract as let is a lump sum contract. Its designation so shows, and there is nothing in its terms to indicate otherwise. Judgment will be rendered for the defendant.

Findings of fact, conclusions of law, and a form of judgment consistent with this opinion may be submitted within ten days from this date.